IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| HAWAII REGIONAL COUNCIL OF CARPENTERS, ET AL., | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Civ. No. 16-00198 ACK-KSC ) ) |
| LANCE YOSHIMURA, | ) ) |
| Defendant. | ) ) ) |

ORDER DENYING DEFENDANT'S MOTION TO DISMISS THE COMPLAINT
OR IN THE ALTERNATIVE FOR JUDGMENT ON THE PLEADINGS

For the reasons set forth below, the Court DENIES Defendant Lance Yoshimura's Motion to Dismiss the Complaint or in the Alternative for Judgment on the Pleadings ("Motion"), ECF No. 12.

BACKGROUND

On July 21, 2015, prior to the filing of the instant suit, Defendant Lance Yoshimura ("Yoshimura") filed a complaint against Hawaii Regional Council of Carpenters and United Brotherhood of Carpenters and Joiners of America, Local 745 ("the Union") and Ronald Taketa ("Taketa") in the Circuit Court of the First Circuit, State of Hawaii (the "State Court Action") asserting claims related to his termination from the Union. Shanley Decl. Ex 1 (State Court Complaint). The State Court Action included four claims: Violation of the Hawaii

Whistleblowers' Protection Act; Unlawful Termination as Against Public Policy; Negligent Infliction of Emotional Distress; and Tortious Interference with a Business Relationship.  Id. ¶¶ 21-39.

The claims stemmed from circumstances surrounding Yoshimura's employment and eventual termination from the Union. Yoshimura alleged that from 2000 until March 7, 2014, he was an employee of the Union.  Id. ¶¶ 6, 19.  According to Yoshimura, Taketa is the Union's Regional Council Head, Executive Secretary, and Treasurer, and Taketa appointed Yoshimura to the position of Assistant Business Representative and Interim Marketing Development Director.  Id. ¶¶ 3, 6.  Yoshimura contended that in 2011, the United States Department of Labor ("Department of Labor" or "DOL") informed the Union of an upcoming audit of a Union trust fund.  Id. ¶ 7.  Yoshimura alleged that in preparation for the audit, the Union sought to falsify time records to cover up its failure to keep accurate and complete records and that Taketa instructed Yoshimura to inform Union business representatives to create false time records.  Id. ¶ 9.  Yoshimura claimed that he repeatedly objected to the Union's scheme and eventually filed complaints with both the Department of Labor and the Federal Bureau of Investigation.  Id.  ¶¶ 9, 12, 15, 18.  In retaliation,

according to Yoshimura, the Union terminated his employment.
Id. ¶ 19.

The Union removed the action to this district court
arguing that the claims were preempted by the Employee
Retirement Income Security Act of 1974 ("ERISA").  Yoshimura v.
Hawaii Carpenters Union Local 475 et al., Civ. No. 15-00292 HG-
RLP ("2015 USDC Action"), ECF No. 1.  The Union also filed in
this district court a counterclaim for violation of Section
501(a) of the Labor Management Reporting and Disclosure Act of
1959 ("LMRDA") alleging that Yoshimura breached his fiduciary
duty to the Union by causing dissension, trying to divide the
staff for his own interests, and falsely accusing the Union of
stealing assets for his own personal gain ("Counterclaim").
Shanley Decl. Ex. 2, ¶ 22.  The Counterclaim alleged that
Yoshimura used the DOL investigation to attempt to oust Taketa
from his position as Executive Secretary-Treasurer ("EST") so
that Yoshimura could take over.  Id. ¶¶ 4-5, 14.  According to
the Union, Yoshimura used the fact that the Union failed to keep
contemporaneous time records to demonstrate that Taketa needed
to be replaced.  Id. ¶ 14.

This district court determined that ERISA did not
preempt Yoshimura's claims and, accordingly, that the court
lacked subject matter jurisdiction.  Motion, Ex. 1 (Order
Denying Defendants' Motion to Dismiss Plaintiff's Complaint and

3

Remanding Proceedings to the Circuit Court of the First Circuit, State of Hawaii), at 20, ECF No. 12-2.  The court held that the Union's Counterclaim could not serve as a basis for the court's federal question jurisdiction.  Id. at 19.  Accordingly, on October 15, 2015, the court remanded the case.  Id. at 20-21.

On April 26, 2016, the Union filed the instant case against Yoshimura.  Compl., ECF No. 1.  The Complaint includes two causes of action: 1) Breach of Fiduciary Duties under the LMRDA (29 U.S.C. § 501(a)) related to Yoshimura's alleged theft of union and membership records, secret audio recordings of confidential conversations, and breach of confidential agreements, id. ¶¶ 27, 28, 34-35; and 2) Violation of the Federal Wiretap Statute, (18 U.S.C. § 2510, et seq.), in relation to allegations of secret audio recordings of confidential conversations, id. ¶¶ 40-43.  The Union alleges that Yoshimura's theft of records, secret audio recordings, and other "illicit conduct was done" to cover his breach of fiduciary duties and to "extort[]" from EST Taketa "the support and commitment necessary for Yoshimura to be appointed the next EST."  Id. ¶ 3.  According to the Union, Yoshimura stole the records and secretly recorded the communications "in attempt to force the current EST to make him the next EST."  Id. ¶ 4.

On June 9, 2016, Yoshimura filed his Motion to Dismiss the Complaint or in the Alternative for Judgment on the

Pleadings arguing that 1) the Union's claims in the instant suit are compulsory counterclaims to the pending State Court Action that should be dismissed; and 2) in the alternative, if the wiretap claim is properly pled, Yoshimura is entitled to judgment on the pleadings with respect to that claim.

The Union filed its Memorandum in Opposition on August 22, 2016.  ECF No. 23.  Yoshimura filed his Reply on August 29, 2016.  ECF NO. 24.

A hearing on the motion was held on September 12, 2016.

## STANDARD

### I.  Motion to Dismiss

Federal Rule of Civil Procedure ("Rule") 12(b)(6) authorizes the Court to dismiss a complaint that fails "to state a claim upon which relief can be granted."  Pursuant to Ashcroft v. Iqbal, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 570 (2007)).  In resolving a Rule 12(b)(6) motion, the court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded factual allegations as true.  Sateriale v. R.J. Reynolds Tobacco Co., 697 F.3d 777, 783 (9th Cir. 2012).

Under Rule 12(b)(6), review is generally limited to the contents of the complaint.  Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); Campanelli v. Bockrath, 100 F.3d 1476, 1479 (9th Cir. 1996).  However, courts may "consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment."  United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003).  Accordingly, the Court takes judicial notice of the fact of the filing or issuance of the publicly recorded documents attached to Yoshimura's Motion and to the Union's Opposition.

## II.  Motion for Judgment on the Pleadings

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment on the pleadings after the pleadings are closed, but early enough not to delay trial.  Fed. R. Civ. P. 12(c).  "Under Federal Rule of Civil Procedure 12(c), judgment on the pleadings is proper 'when, taking all the allegations in the non-moving party's pleadings as true, the moving party is entitled to judgment as a matter of law.'"  Ventress v. Japan Airlines, 486 F.3d 1111, 1114 (9th Cir. 2007); see also Alexander v. City and Cnty. of Honolulu, 545 F. Supp. 2d 1122, 1130 (D. Haw. 2008).  The standard governing a Rule 12(c) motion for judgment on the pleadings is "functionally identical" to

6

that governing a Rule 12(b)(6) motion.  <u>United States ex rel.</u>
<u>Cafasso v. Gen. Dynamics C4 Sys., Inc.</u>, 637 F.3d 1047, 1054 n.4
(9th Cir. 2011).

## DISCUSSION

### I.   Applicable Law

         Yoshimura maintains that the instant Complaint
consists of compulsory counterclaims that should have been
raised in the State Court Action, pursuant to Federal Rule of
Civil Procedure 13(a), and accordingly, that the claims should
be dismissed.  Mot. at 5-10.  In response, the Union argues that
the federal rule cannot apply "extraterritorially to require
that the Union amend its pending counterclaim in the [State]
Court Action."  Mem. in Opp. at 9, ECF No. 23.  In his Reply,
Yoshimura denies that he is requesting the Court to apply the
rule extraterritorially, and points to the fact that the Union
filed its Counterclaim in federal court pursuant to the LMRDA in
the 2015 USDC Action, to support his claim that the federal rule
should apply.  Reply, at 5-6.

         The parties, however, have failed to acknowledge that
"Hawaii state law governs the preclusive effect of the failure
to raise a compulsory counterclaim in an earlier state court
action."  <u>JPMorgan Chase Bank, N.A. v. Moniz</u>, Civ. No. 15-00512
DKW-BMK, 2016 WL 1242526, at *3 (D. Haw. Mar. 29, 2016) (quoting
<u>Peelua v. Impac Funding Corp.</u>, Civ. No. 10-00090 JMS-KSC, 2011

WL 1042559, at *10 (D. Haw. Mar. 18, 2011)); see also Pochiro v. Prudential Ins. Co. of Am., 827 F.2d 1246, 1249 (9th Cir. 1987) ("The question whether the [plaintiffs'] claims are compulsory counterclaims which should have been pleaded in the earlier Prudential state court action is a question of state law."). Thus, in JPMorgan and Peelua, this district court considered Hawaii law to determine whether the respective federal complaints at issue should be dismissed on the basis that they contained compulsory counterclaims to the earlier-filed state cases.  See JPMorgan, 2016 WL 1242526, at *1, *3; Peelua, 2011 WL 1042559, at *10-11.  Here, because the State Court Action was originally filed in state court and is currently pending in state court, the Court finds that state law governs the determination of whether the Union's claims in the instant case are barred as compulsory counterclaims to the State Court Action.[1]

## II.  Whether the Union's Claims are Compulsory Counterclaims to the State Court Action

Hawaii Rules of Civil Procedure ("HRCP") 13(a) defines a compulsory counterclaim, and is substantively identical to

---

[1]     As discussed further below, a compulsory counterclaim must be asserted at the time the party's answer is filed.  Here, the Union's answer was filed in the State Court Action, providing further support that state law should govern the compulsory counterclaim question in the instant case.

Federal Rule of Civil Procedure 13(a).   HRCP 13(a) provides in

relevant part:

> A pleading shall state as a counterclaim any
> claim which at the time of serving the pleading
> the pleader has against any opposing party, if it
> arises out of the transaction or occurrence that
> is the subject matter of the opposing party's
> claim and does not require for its adjudication
> the presence of third parties of whom the court
> cannot acquire jurisdiction.

As an initial matter, the Court notes that the Union

and Yoshimura are each parties to both the state and federal

court cases and there is no issue with respect to third parties.

Thus, this portion of HRCP 13(a) is satisfied here.

Turning to the substance of the claims, as is true in

the Ninth Circuit, under Hawaii law, "a counterclaim is

compulsory if there is a logical relation between the original

claim and the counterclaim—i.e., it arises out of the same

aggregate of operative facts as the original claim." E. Sav.

Bank, FSB v. Esteban, 296 P.3d 1062, 1070 n.13 (Haw. 2013); see

also Booth v. Lewis, 798 P.2d 447, 449 (Haw. Ct. App. 1990)

("[T]he most widely accepted standard is the logical

relationship test . . . ."). "If a defendant fails to assert a

compulsory counterclaim, he is precluded from asserting it

against the plaintiff in a subsequent action." E. Sav. Bank,

296 P.3d at 1070 n.13.

As recognized by the Hawaii Supreme Court, the rationale behind the rule is "to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters." Bailey v. State, 552 P.2d 365, 368 (Haw. 1976).  Thus, the "logical relationship" test is construed liberally.  See Pochiro, 827 F.2d at 1249 ("This flexible approach to Rule 13 problems attempts to analyze whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." (citation omitted)).  Importantly, "'transaction' is a word of flexible meaning which may comprehend a series of occurrences if they have a logical connection." Id. at 1252 (citation omitted); see also Kalakaua Relief Line, LLC v. 1830 Kapiolani, LLC, No. CAAP-12-0001012, 2016 WL 2984271, at *5 (Haw. Ct. App. May 23, 2016) (citing to a Ninth Circuit case for the proposition that a "'transaction' . . . is not confined to a single, isolated act or occurrence . . . but may embrace a series of acts or occurrences logically interrelated" (alterations in original) (quoting Cheiker v. Prudential Ins. Co. of Am., 820 F.2d 334, 337 (9th Cir. 1987)).

Pursuant to this standard, the Court concludes that the Union's LMRDA claim and wiretap claim before this Court are logically related to the claims raised by Yoshimura in the State

Court Action.  In the State Court Action, Yoshimura raised claims for negligent infliction of emotional distress, unlawful termination, tortious interference with a business relationship, and a claim under Hawaii's Whistleblower Protection Act.  All of these claims relate to Yoshimura's period of employment at the Union and his apparently contentious business relationship with his employer, which eventually led to his termination.  The claims currently pending in this Court also deal with Yoshimura's contentious employment at the Union, through the allegations that, during his employment, Yoshimura stole Union records and recorded communications in breach of his fiduciary duties and as prohibited by the Federal Wiretap Statute.

Under these circumstances, the Court finds that the state claims and the claims raised here "arise[] out of the same aggregate of operative facts."  E. Sav. Bank, 296 P.3d at 1096 n.13; cf. Pochiro, 827 F.2d at 1250 (finding operative facts underlying former employee's action for, inter alia, intentional interference with contractual advantage, tortious breach of employment contract, and intentional infliction of emotional distress were "inextricably intertwined" with former employer's action to enjoin former employee's use of confidential customer records); Booth, 798 P.2d at 449 (finding claim was compulsory counterclaim where claims were "offshoots of the rather lengthy business relationship" between the parties).

The Union argues that Yoshimura's state claims are unrelated to the Union's claims at issue in this Court because the Union was unaware that Yoshimura stole union records and recorded confidential communications at the time Yoshimura was terminated and because Yoshimura did not claim that the Union fired him as a result of the stolen records and recordings. Mem. in Opp., at 13.  This contention, however, fails to take into account the flexible nature of the logical relationship test.  As noted above, the standard should be interpreted broadly, and in determining whether claims arise out of the same "transaction" or "occurrence" the transaction may include a "series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship."  Warshawsky & Co. v. Arcata Nat. Corp., 552 F.2d 1257, 1261 (7th Cir. 1977) (citing Moore v. New York Cotton Exchange, 270 U.S. 593, 610 (1926)).  On this basis, it is of little relevance that the Union did not have knowledge of Yoshimura's actions and that the theft and audio recordings are not explicitly raised in Yoshimura's state court claims.  What matters instead is that the claims are logically related because they arose out of the same set of operative facts, i.e., the business relationship between Yoshimura and the Union during Yoshimura's employment and subsequent termination.

12

The Court's conclusion that the claims are logically related finds further support by comparing the Union's Counterclaim currently pending in the State Court Action with the claims raised in the instant case.  The Counterclaim includes one cause of action for breach of fiduciary duty under the LMRDA.  In the Counterclaim, the Union alleged that Yoshimura breached his fiduciary duties by "engag[ing] in a pattern of conduct designed to weaken" the Union "for the sole purpose of furthering his campaign plan to oust his boss, [EST] Taketa."  Counterclaim ¶ 3.  The Counterclaim alleged that Yoshimura used the DOL investigation—at issue in Yoshimura's wrongful termination claims—in an attempt to become the new EST of the Union.  Id. ¶¶ 14, 16.  Notably, the Union admitted in the Counterclaim that Yoshimura's state claims and the LMRDA claim were "so related . . . that they form part of the same case or controversy."  Id. ¶ 11.  The Union noted,

> They arise out of a common nucleus of operative facts in that Yoshimura's conduct alleged here arose out of the [DOL] investigation he alleges and his subsequent conduct to that investigation up to and including his termination.  Thus, the facts alleged here substantially overlap [with] the facts alleged by Yoshimura.

Id.

The LMRDA breach of fiduciary claim and the wiretap claim pending before this Court similarly involve allegations that Yoshimura acted improperly in an attempt to take over the

13

position of EST from Taketa.  Compl. ¶¶ 3-4.  Admittedly, the instant Complaint does not specifically discuss the DOL investigation or facts surrounding Yoshimura's termination. Nonetheless, because the Counterclaim and Yoshimura's claims are related (as admitted by the Union) and the Counterclaim and the claims in the instant case are related, it logically follows that the claims before this Court are logically related to Yoshimura's state court claims.[2]

However, the inquiry does not end here.  Pursuant to HRCP 13(a), and similar to its federal counterpart, "[a] pleading shall state as a counterclaim any claim <u>which at the time of serving the pleading the pleader has against any opposing party</u>." (Emphasis added).  Thus, even if the claims are logically related, "a party is not required to assert a counterclaim" if the counterclaim "had not matured at the time [the party] serves his pleading." <u>Fogarty v. State</u>, 705 P.2d 72, 75 (Haw. Ct. App. 1985); <u>Kuschner v. Nationwide Credit, Inc.</u>, 256 F.R.D. 684, 689 (E.D. Cal. 2009) (noting that a counterclaim "is not considered compulsory although it may arise

---

[2]     The Court additionally notes that, according to the Union, it only found out about Yoshimura's theft of records and recorded conversations through discovery conducted in the State Court Action.  Mem. in Opp., at 5.  That this information was discoverable in the State Court Action further indicates that Yoshimura's state court claims are logically related to the claims at issue here.

14

from the same transaction or occurrence as the opposing party's claim" where "the counterclaim has matured after the pleading was filed"). The Hawaii Intermediate Court of Appeals has noted that "[a] claim is matured for the purposes of the rule if the person asserting the counterclaim knew or by the exercise of reasonable diligence should have known that his claim existed at the time he served his pleading." Fogarty, 705 P.2d at 75.

The parties appear to disagree regarding the appropriate time period that should be considered to determine whether the Union's claims had matured. The Union argues that it had insufficient knowledge regarding the claims raised before this Court at the time Yoshimura served his state court complaint. Mem. in Opp., at 17. Yoshimura maintains that the Court should consider whether the Union's claims had matured at the time the Union filed the LMRDA Counterclaim in the 2015 USDC Action. Reply, at 7. Neither party is correct. Instead, the Court must consider whether the Union's claims had matured at the time the Union filed its answer in the State Court Action. See Fogarty, 705 P.2d at 620 (noting that "the relevant time under [HRCP] 13(a) is the point when [the] Fogartys filed their answer"); see also 6 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1411 (3d ed. 1998) ("A counterclaim acquired by defendant after answering the complaint

will not be considered compulsory, even if it arises out of the same transaction as does plaintiff's claim.").

The parties have not provided the Court with the date the answer was filed in the State Court Action.  However, the Court through its own investigation of the public record in the State Court Action has determined that the Union filed its answer on October 23, 2015.  The Court sua sponte takes judicial notice of this date.  See Fed R. Evid. 201 (providing that the court may on its own take judicial notice of facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned").  Accordingly, the Court must determine whether the Union "knew or by the exercise of reasonable diligence should have known that" its claims asserted here existed in October 2015.  Fogarty, 705 P.2d at 75.[3]

The Union argues that it was unaware of Yoshimura's theft of the Union records or the secret audio recordings until 2016 when it obtained copies of the documents and some of the recordings through discovery in the State Court Action.  Mem. in Opp., at 13-17; see also Compl. ¶ 28.  The Union admits that it was aware of "unsubstantiated rumor[s]" that Yoshimura had secret recordings but that when confronted with this issue,

---

[3]    The Court notes that even if the Court considered the time periods proposed by the parties, the Court's resolution of this issue would not change given the Union's allegations that it did not discover the theft or audio recordings until 2016.

Yoshimura "adamantly denied recording anyone."  Mem. in Opp., at 13-14; see also Compl. ¶¶ 5, 26, 28.  In turn, Yoshimura argues that the Union "was aware of Mr. Yoshimura's document retention" since at least March 2013 "when [Taketa] . . . threatened Mr. Yoshimura that it would be in his best interest to get rid of his documentation."  Reply, at 7.  Yoshimura maintains that "[t]his is all documented in the discovery . . . provided to the Union" in the State Court Action.  Reply, at 7.  With respect to the wiretapping claim, Yoshimura argues that 1) it is unlikely that the Union would have confronted Yoshimura based on unsubstantiated rumors alone and that it is "much more likely" that the Union had "sufficient information" regarding the secret recordings; 2) the Union took Yoshimura's denials at face value and failed to further investigate the issue of the secret recordings; and 3) the Union "knew or reasonably should have known" based on the rumors that Yoshimura had secretly recorded communications and that they had sufficient information for an "'information and belief' standard of pleading."  Mot., at 9-10.

        The Court concludes that based on the information provided by the parties, the Court is unable to determine that the Union knew or should have known about the stolen materials and the secret audio recordings at the time its answer was filed in the State Court Action.  The Complaint alleges that the Union did not "discover" Yoshimura's theft and illegal recordings

17

until 2016 and that when Yoshimura denied wrongdoing, the Union "had no evidence or any reasonable basis to rebut Yoshimura's denial thereby forcing it to accept Yoshimura's denial at face value."  Compl. ¶ 28.  On a Motion to Dismiss, the Court must accept these allegations as true.  See Sateriale, 697 F.3d at 783.

Moreover, Yoshimura has failed to provide support for his claim that the Union knew about the theft of the documents in March 2013, and even if such evidence had been provided, it is unlikely that the Court could consider it in a motion to dismiss.  In terms of the claims regarding the secret audio recordings, the Court agrees with the Union that Yoshimura's claims that the Union had information beyond "unsubstantiated rumors" are speculative.  The Court also agrees with the Union that based on an "unsubstantiated rumor" alone, the Union could not meet the pleading standard requiring that "the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery."  HRCP Rule 11(b)(3); see also Fed. R. Civ. P. 11(b)(3) (same).

In sum, although the Court finds that the claims before it are logically related to Yoshimura's claims in the State Court Action, the Court is unable to determine that the

Union's claims had matured at the time its answer was filed in the State Court Action.  The Court thus concludes that the Union's claims in the instant Complaint are not compulsory counterclaims to the State Court Action.  Accordingly, the Court denies Yoshimura's Motion to Dismiss.  Cf. Fogarty, 705 P.2d at 76 (holding plaintiffs' action not barred where claims were not compulsory counterclaims to earlier action given that plaintiffs "did not have an opportunity to present their counterclaim at the time they served their answer" in the earlier action); Kuschner, 256 F.R.D. at 690 (holding the defendant's counterclaim related to nonconsensual recordings of confidential telephone conversations had not matured at time its answer was filed because the defendant only learned of the recordings during a deposition in preparation for trial).[4]

---

[4]     The Court will not address the issue raised regarding abstention pursuant to Colorado River Water Conservation District v. United States, 424 U.S. 800, 880 (1976), since the parties have not sufficiently briefed this issue.  The Court notes that the Ninth Circuit has seldom approved abstention pursuant to Colorado River.  See, e.g., Holder v. Holder, 305 F.3d 854, 867 (9th Cir. 2002) (noting a stay of proceedings pursuant to the Colorado River doctrine is only appropriate where "exceptional circumstances" are present (citation omitted)).

### III. Viability of the Union's Wiretap Claim

Yoshimura argues that he is entitled to judgment on the pleadings for the Union's claim pursuant to the Federal Wiretap Statute.  Mot., at 11-12.

As an initial matter, the Court notes that a motion for judgment on the pleadings is inappropriate at this stage of the proceedings because the pleadings have not been closed.  See Fed. R. Civ. P. 12(c) (noting a party may move for judgment on the pleadings "[a]fter the pleadings are closed."). Specifically, Yoshimura has not yet filed an answer, rendering his Motion for Judgment on the Pleadings premature.  See Doe v. United States, 419 F.3d 1058, 1061 (9th Cir. 2005) (noting that a motion for judgment on the pleadings filed before the answer "was premature and should have been denied"); City Bank v. Glenn Const. Corp., 68 F.R.D. 511, 512 (D. Haw. 1975) ("Judgment on the pleadings under Rule 12, of course, is available only when the pleadings are closed and there has been no answer yet in this case.").  Accordingly, the Court denies Yoshimura's Motion for Judgment on the Pleadings.  The Court, however, deems it appropriate to consider Yoshimura's claim as a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  See Weeks v. Wyeth, Inc., 120 F. Supp. 3d 1278, 1283 (M.D. Ala. 2015) (construing motion for judgment on the pleadings filed prior to the answer as a motion to dismiss pursuant to Rule 12(b)(6));

20

Signature Combs, Inc. v. United States, 253 F. Supp. 2d 1028, 1030 (W.D. Tenn. 2003) (same).

The Complaint alleges that "Yoshimura violated the Federal Wiretap Statute by intentionally and surreptitiously recording numerous [Union] protected communications for improper, tortious and criminal purposes." Compl. ¶ 40. 18 U.S.C. § 2511 et seq. makes it unlawful to intentionally intercept or endeavor to intercept, use, or disclose wire, oral, or electric communications of individuals or entities. 18 U.S.C. § 2511(2)(d) provides,

> It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.

In his Motion, Yoshimura argued that because he was a party to the communications at issue, his actions were lawful. Mot., at 11. The Union, in turn argues that its claim is based on the exception in the statute, for communications "intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." Mem. in Opp., at 18 (emphasis omitted). In his Reply, Yoshimura asserts that the Union "never elaborates or

suggests what those 'improper, tortious and criminal purposes' might be." Reply, at 10.

The Union is correct that even though Yoshimura was a party to the communications, their "interception" may violate the statute if the purpose behind the recordings was criminal or tortious. The Ninth Circuit has explained,

> Under section 2511, "the focus is not upon whether the interception itself violated another law; it is upon whether the *purpose* for the interception—its intended use—was criminal or tortious." Payne v. Norwest Corp., 911 F. Supp. 1299, 1304 (D. Mont. 1995), aff'd in part and rev'd in part, 113 F.3d 1079 (9th Cir. 1997). See also Deteresa v. American Broad. Cos., 121 F.3d 460, 467 n.4 (9th Cir. 1997) (emphasizing the distinction between a taping that is itself tortious or criminal, and one carried out for the purpose of committing some other crime or tort). Where the taping is legal, but is done for the purpose of facilitating some further impropriety, such as blackmail, section 2511 applies. Where the purpose is not illegal or tortious, but the means are, the victims must seek redress elsewhere.

Sussman v. Am. Broad. Companies, Inc., 186 F.3d 1200, 1202–03 (9th Cir. 1999). Yoshimura's claim that the Union has not suggested a criminal or tortious motive is incorrect. To the contrary, the Union alleges that "Yoshimura's illicit conduct was done for purposes including covering up his own breaches of fiduciary duties and extorting from [Taketa] . . . the support and commitment necessary for Yoshimura to be appointed the next

EST." Compl. ¶ 3.[5] In its Opposition, the Union states that "breaching one's fiduciary duties and extortion are unlawful under federal law." Mem. in Opp., at 19 (citing 29 U.S.C. 501(a); 18 U.S.C. § 1951). Yoshimura does not challenge the sufficiency or viability of these allegations. Accordingly, the Court denies Yoshimura's Motion in this regard.[6]

---

[5] The Complaint additionally alleges that the recordings were criminal pursuant to Nevada and California law. Compl. ¶ 20. The state laws cited to in the Complaint, however, are more restrictive wiretapping statutes then the federal version, as they prohibit the recording of conversations unless all parties to the conversations have consented. See Nev. Rev. Stat. § 200.620; Cal. Penal Code § 632(a); see also Buckles v. Green Tree Servicing, LLC, No. 215CV01581GMNCWH, 2016 WL 3360960, at *2 (D. Nev. May 25, 2016) ("The Nevada Supreme Court has interpreted Nevada Revised Statutes 200.620 to 'prohibit the taping of telephone conversations with the consent of only one party.'" (citation omitted)). Accordingly, the state laws are insufficient by themselves to "demonstrate that the interception of [the] communication[s] was motivated by a tortious purpose since section 2511 does not punish the taping of the conversation itself but rather the improper use of the recording by the party who intercepted the communications." Buckingham v. Gailor, No. 00-CV-1568, 2001 WL 34036325, at *5-6 (D. Md. Mar. 27, 2001), aff'd sub nom. Buckingham ex rel. Buckingham v. Gailor, 20 F. App'x 243 (4th Cir. 2001); see also Sussman, 186 F.3d at 1202-03; Roberts v. Americable Int'l Inc., 883 F. Supp. 499, 503 (E.D. Cal. 1995) ("However, the court will not interpret the federal limited permission to intercept oral conversations granted by § 2511(2)(d) to be negated by state law which itself may invalidate such interception, and which itself may render such interception tortious.").

[6] Yoshimura also argues that with respect to one of the secret recordings, "the recording took place over a speaker phone" and claims that "[a] conversation recorded on a speaker phone 'was not intercepted within the meaning of the federal[] wiretapping act[].'" Mot., at 12 (alterations in original) (quoting T.B. Proprietary Corp. v. Sposato Builders, Inc., No.

(continued . . . )

## CONCLUSION

For the foregoing reasons, the Court DENIES Defendant Lance Yoshimura's Motion to Dismiss the Complaint or in the Alternative for Judgment on the Pleadings, ECF No. 12.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, September 12, 2016



_____
Alan C. Kay
Sr. United States District Judge


Hawaii Regional Council of Carpenters et al. v. Yoshimura, Civ. No. 16-00198
Order Denying Defendant's Motion to Dismiss the Complaint or in the
Alternative for Judgment on the Pleadings

---

( . . . continued)
CIV. A. 94-6745, 1996 WL 290036, at *5 (E.D. Pa. May 31, 1996)).
However, this allegation apparently only pertains to one of the
allegedly recorded conversations.  Moreover, as noted by the
Union, the Complaint does not allege that the recording took
place over a speaker phone.  Accordingly, the Court may not
consider Yoshimura's claim at this stage of the proceedings.